IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE: METROPOLITAN LIFE            )
INSURANCE COMPANY SALES             )
PRACTICES LITIGATION                ) Misc. No. 96-179
                                    )

This matter relates to:
Matthews v. Metropolitan Tower
Life Ins. Co. and MetLife, Inc.
Case No. 10-38725 CA 40
(11th Jud. Cir., Miami-Dade County, Fla.)

## OPINION AND ORDER

## SYNOPSIS

Before the Court is Defendant's effort to enjoin an action pending in Miami-Dade County, Florida, involving an insurance policy and disability rider that Plaintiff purchased from Defendant. In that action, Plaintiff's Amended Complaint asserts nine counts, including class and individual claims for declaratory and ancillary relief regarding benefits due under a disability rider (Counts I and II); unfair claims practices pursuant to Florida statute (Count III); fraud (Count IV); negligent misrepresentation (Count V); declaratory relief regarding the duty of care owed (Count VI); breach of fiduciary duties (Count VII); statutory civil theft or exploitation (Count VIII); and conversion (Count IX).[1]

To preclude the Florida litigation, Defendant has filed a Motion to enforce the settlement agreement and release entered into in <u>In re Metropolitan Life Ins. Co. Sales Practices Litigation</u>, Misc. Docket No. 96-179, MDL 1091 (W.D. Pa. Dec. 28, 1999). Defendant's supporting briefs are fairly general, but its primary objection is that Plaintiff's claims are based on conduct that

---

[1] Although the Plaintiff did not number the Counts of the Amended Complaint, I have done so for purposes of clarity and ease of reference.

1

falls within the time period subject to the release, and are of the type released. Plaintiff opposes the Motion, on grounds that the release does not apply to his claims, for various reasons.

For the following reasons, Defendant's Motion will be granted in part, and denied in part.

**OPINION**

**I. JURISDICTION**

Federal courts have broad powers under the All Writs Act, to protect their own judgments. In re Diet Drugs, 282 F. 3d 220 (3d Cir. 2002). Moreover, the Anti-Injunction Act permits federal courts to prevent state court litigation of an issue that was previously presented to, and determined by, a federal court. In re Prudential Ins. Co. of America Sales Prac. Litigation, 261 F. 3d 355, 364 (3d Cir. 2001). Thus, a federal court may enjoin an action that threatens the administration of a settlement.

**II. MDL PROCEEDINGS[2]**

Defendant's Motion stems from an MDL class action proceeding, at W.D. Pa. Docket No. 1091, with which both parties are obviously familiar. Thus, I will merely sketch the aspects of the proceeding that are pertinent to the present dispute.

The MDL litigation settlement class was described as including persons and entities who have or had an ownership interest in any permanent life insurance policy or any deferred annuity issued by MetLife in the United States during the period from January 1, 1982 through December 31, 1997 pursuant to an individual sale. Ultimately, I issued a final order dismissing the claims of all members of the settlement class, and the release and waiver of "released

---

[2] In ensuing years, the MDL settlement and release has given rise to a multitude of court decisions on motions to enforce the settlement, many of which the present parties have submitted and cited for my consideration. While I am aware that certain decisions may appear inconsistent, close analysis demonstrates that the arguments presented to the Court, or omitted from the parties' submissions, are often decisive. In cases to which Defendant points, for example, the parties did not raise, and thus I did not consider, any of the exclusions to the settlement and release. This does not mean that the exclusions are inapplicable to similar fact patterns; instead, it means that I decided only the issues that the parties placed before me.

transactions." The "released transactions" in the MDL were defined, in the Stipulation of Settlement, as follows:

> Any and all claims arising out of, concerning, or in any way relating to the marketing, solicitation, application, underwriting, issuing, pricing, charges, rates, acceptance, sale, purchase, operation, retention, administration, servicing or performance of any Policy; and any and all claims arising out of, concerning, or in any way relating to the matters alleged in the Complaint and Amended Complaint.

Further, the Release and Waiver that accompanied the settlement encompassed the following:

> [Claims] including, without limitation, any acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements of representations….relating to: …
>
> the ability to keep or not to keep a policy or Policies in-force based on a fixed number and/or amount of premium payments….; the fact that a Policy or Policies were or were not life insurance….whether a Policy or Policies were, would operate or could function as an Investment Plan….the relationship between a Policy's or Policies' cash surrender value and the cumulative amount of premiums paid;….the use of an existing Policy's….cash value….
>
> with respect to Policies, the Company's practices regarding….policy or premium charges and monthly deductions…or any other matters relating to dividends with respect to the Policies, interest or other policy crediting rates; interest or other policy bonuses….policy charges, premium charges, monthly deductions or cost of insurance and administrative charges…..
>
> disclosures in any local, state or federal filing by the Company relating to the released transactions…
>
> the sale of Policies as an investment, savings…vehicles, or any representations…regarding such matters…

The release contained the following exclusionary language:

> Nothing in this Release shall be deemed to alter (a) a Class Member's contractual right…to make a claim for contractual benefits that will become payable in the future pursuant to the express written terms of the Policy or Annuity issued by the Company (b) a Class Member's right to assert any claim that independently arises from acts, facts, or circumstances arising after the end

3

> of the Class Period; (c) a Class member's right to make a claim for theft, or the wrongful taking of customer funds, relating to a Policy or Annuity....

In the MDL, as detailed in the Findings of Fact and Conclusions of law entered in that proceeding, the plaintiffs' allegations, broadly speaking, involved churning, or misrepresentations regarding replacement policies; misrepresentations regarding vanishing premiums; improper passing of tax liability onto insureds; misrepresentations regarding qualified plans; and misrepresentations regarding the investment status of policies.

## III. THE FLORIDA ACTION

The following is a summary of Plaintiff's allegations. Plaintiff purports to bring claims on behalf of himself, as well as a class of persons who purchased a MetLife product that involves a term life insurance policy coupled with an investment account, that contains a disability waiver benefit rider with language similar to or the same as that in the standard form used for Plaintiff's rider. Plaintiff purchased such a policy from Defendant in 1985.

Under the policy, he made monthly premium payments, a portion of which, called the "monthly deduction," went toward the actual cost of the life insurance and benefits provided by riders. Defendant was to put the remaining portion of the premium payment into an interest-bearing investment account, called an "Accumulation Fund." In addition, Plaintiff purchased a Rider for Disability Waiver Benefit. According to the rider, in the event of total disability, Defendant would waive the monthly deductions for the policy for the duration of the disability. During the disability, payments would be optional on the part of the insured, who could elect to continue to make payments into the Accumulation Fund. The rider also provided that Defendant "may" require proof of disability, and that the benefit could only be discontinued if the insured was either no longer disabled, or failed to provide proof of disability "when required."

In January, 1995, Plaintiff was diagnosed with HIV/AIDS, and applied for benefits under the rider. Defendant approved the claim, with an effective date of January 15, 1995. At that time, the policy required Defendant to waive or refund premiums and costs associated with the policy and rider. In other words, the monthly deductions were to cease. Instead, Plaintiff alleges that Defendant began deducting the cost of the insurance from his Accumulation Fund, and made various misrepresentations in an effort to conceal the improper deductions. In other words, Plaintiff alleges that he did not receive the waiver benefits of the rider that he purchased. In 2009, Plaintiff received a letter advising him that Defendant had not received premium payments on the policy, and that the Accumulation Fund had been used to pay its cost.

When he contacted Defendant, Plaintiff was told to disregard the letter, and that his policy was on disability waiver. Later in 2009, Plaintiff received a Notice of Payment Due, stating that Plaintiff owed a premium on the policy. Prior to that notice, Plaintiff had not received any notice of premiums due since the approval of his disability claim. Later, Defendant represented to the New York State Department of Insurance that Plaintiff's disability had ended in March, 1996, and that the disability rider did not waive the requirement to pay premiums. To date, Defendant has refused to alter its position regarding the 1996 termination of disability status, and has stated that it would consider reinstating such status if Plaintiff were to submit medical disability forms.

## III. NOTICE

As a threshold matter, I address Plaintiff's contention that he did not receive adequate notice, because he received an incomplete notice packet. Observing that actual notice is not a prerequisite to constitutionality, the court in Greene v. Metro. Ins. & Annuity Co., No. 7-2903, 2009 U.S. Dist. LEXIS 33767, at **18-20 (D.N.J. Apr. 20, 2009), rejected a similar argument.

5

Moreover, in connection with the MDL, I conducted a fairness hearing in 1999, in which I determined that the class settlement was fair, reasonable, and adequate, and that class notice complied with all applicable requirements. "Once issues of due process protections for class members have been decided by a court, they may not be relitigated. Prior to approving a settlement, a court necessarily decides these very issues." Brooks v. Wachovia Bank, N.A., No. 6-00955, 2007 U.S. Dist. LEXIS 68079, at **12-13 (E.D. Pa. Sept. 13, 2007). Defendant has submitted the affidavit of Amy Lake of Rust Consulting, Inc., which dealt with the exclusion and election requests for class members in the MDL. She testifies that a class notice package was mailed to Plaintiff, and that no election form or opt-out was received from Plaintiff. I have had multiple opportunities since 1999 to consider similar attacks on notice in the MDL. As in previous cases, the materials submitted by Defendant are sufficient to overcome Plaintiff's arguments.

## IV. SCOPE OF RELEASE

From the outset, I note that basic contract principles apply to the evaluation of settlement agreements. McGowan Investors LP v. Frucher, 392 Fed. Appx. 39, 45 (3d Cir. Pa. 2010); Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC, No. 4-1621, 2005 U.S. Dist. LEXIS 11130, *15 (June 9, 2005 S.D.N.Y.). Thus, I am bound to examine the plain language of the settlement and release. Genesis Bio-Pharmaceuticals, Inc. v. Chiron Corp., 27 Fed. Appx. 94, 99, 100 (3d Cir. 2002). According to those principles, "[i]t is axiomatic that courts construing contracts must give 'specific terms and exact terms . . . greater weight than general language.'" County of Suffolk v. Alcorn, 266 F.3d 131, 139 (2d Cir. 2001). If there is a conflict between general and specific language, therefore, "any reconciliation should give full effect to the more specific." Tishman & Lipp, Inc. v. Delta Airlines, 275 F. Supp. 471, 480 (S.D.N.Y. 1967).

I am mindful, too, of other principles pertinent to the case at bar. On the one hand, "releases should be construed narrowly, i.e., "words of a release should not be construed to extend beyond the express consideration mentioned so as to make a release for the parties which they never intended nor contemplated." Carcaise v. Cemex, Inc., 200 Fed. Appx. 116, 125 (3d Cir. 2006). Accordingly, I view the Defendant's Motion in light of the precaution that "preclusion language in the… class notice and settlement agreement must, in order to avoid due process concerns, be strictly construed against those who seek to restrict class members from pursuing individual claims." In re Diet Drugs, 369 F.3d at 308. On the other hand, courts within this Circuit favor comprehensive settlements, and have acknowledged that a release may be quite broad. See In re Prudential Ins. Co. of Am. Sales Pract. Litig., 261 F. 3d 355, 365 (3d Cir. 2001). Thus, "a judgment pursuant to a class settlement can bar later claims based on the allegations underlying the claims in the settled class action. This is true even though the precluded claim was not presented, and could not have been presented, in the class action itself." Id. at 366.

**A. General Release and Waiver Language**

Although Plaintiff challenges the propriety of the definition of the settlement class, Plaintiff does not dispute that he is included in that definition. Plaintiff alleges that he purchased his policy in 1985, which brings him within the settlement class. It is clear, too, that Plaintiff's claims fall within the broadest language of the settlement and release. Plaintiff's Amended Complaint, for example, clearly asserts claims for acts, omissions, facts, matters, or transactions with respect to the Company's practices regarding policy or premium charges and monthly deductions. The claims "relate to," "concern," and "arise out of" the operations, administration, performance, charges, and servicing of a Policy. Barring independent grounds for exclusion,

7

therefore, under the plain language of the settlement and release, such claims are precluded from relitigation.

### B. Contractual Claim Exception

Having decided that notice was adequate, that Plaintiff is a class member, and that the general language of the MDL settlement and release encompasses his claims, I must proceed to address Plaintiff's contentions that there exist other grounds for omitting his claims from the scope of the MDL settlement and release. Therefore, I first address his suggestion that his claims fall within the carve-out providing that the release does not alter a class member's "contractual right…to make a claim for contractual benefits that will become payable in the future pursuant to the express written terms of the Policy or Annuity issued by the Company."

Here, Count II of Plaintiff's Amended Complaint seeks declaratory and ancillary relief on his own behalf.[3] Due to the very nature of the declaratory judgment sought, the reviewing court must assess the express contract language, and declare the parties' contractual rights thereunder. Plaintiff's allegations in that regard refer to "the benefits to which class members are entitled to receive [sic] under a disability rider," as opposed to malfeasance covered by the settlement and release. See, e.g., In re Am. Investors Life Ins. Co. Annuity Mktg. &. Sales Prac. Litig., MDL No. 1712, 2011 U.S. Dist. LEXIS 105327 (E.D. Pa. Sept. 16, 2011). Plaintiff's right to seek a declaration rests on his status as a party to the contract; in essence, it is his "contractual right" to make this claim. Because Plaintiff seeks to declare his contractual right to obtain benefits pursuant to the express terms of the Policy, these claims fall within the purview of Plaintiff's contractual right to make a claim for contractual benefits. They are, therefore, exempted from the release.

---

[3] Plaintiff's class claims are dealt with separately, infra.

Plaintiff does not, however, acknowledge the restrictive language limiting claims permissible under the exclusion to those regarding contractual benefits "that will become payable in the future." Under the plain language of this carve-out, Plaintiff cannot make any claim for relief in the form of restoration of or compensation for past benefits or conduct. Any such claim plainly cannot be one for contractual "benefits that will become payable in the future."[4] Similarly, contrary to Plaintiff's assertion, it is not sufficient that the claims merely "involve" contractual benefits. Plaintiff's claim for breach of fiduciary duty at Count VII of the Amended Complaint, and his declaratory claim regarding the nature of the duty owed at Count VI, do not fall within the contractual exception to the release.[5] These simply do not constitute claims for benefits payable pursuant to the express terms of the contract, and cannot be exempted for that reason. Because they otherwise fall within the extremely broad settlement and release language, and Plaintiff urges no other persuasive grounds for exclusion, those claims are barred from proceeding.

### C. Theft/Wrongful Taking Exclusion

Next, I address Plaintiff's contention that Counts VIII and IX of the Amended Complaint, are not precluded, according to the express exclusion in the release relating to a class member's "right to make a claim for theft, or the wrongful taking of customer funds, relating to a Policy." Those Counts bring suit for statutory civil theft and common law conversion of the monies in the

---

[4] The limitation imposed here stems from the "future" language of the contractual exception, which is to be distinguished from the chronological parameters of the class period. Contrary to Defendant's suggestion, Plaintiff's declaratory claim is not subject to the chronological strictures of the settlement and release, imposed by the class period's 1997 termination date. A declaratory judgment claim is ripe, in part, when the parties have an adverse interest. For interest to be adverse, the plaintiffs must allege, in part, that the defendants took adverse overt conduct. Alpart v. General Land Ptnrs, Inc., 574 F. Supp. 2d 491, 508 (E.D. Pa. 2008). Here, Plaintiff's declaratory judgment ripened in 2009. The declaratory claim does not seek to state a claim regarding the misappropriation of funds, and thus it is of no moment when the wrongdoing occurred.

[5] Moreover, I note that Count VI of the Amended Complaint, for common law fraud, relates directly to Defendant's potentially deceptive marketing of the policy as an investment, and the interest rates thereon. Thus, it shares a common ground with claims asserted in the MDL.

Accumulation Fund. Under Florida law, "conversion is defined as a wrongful taking…." Scantland v. Jeffry Knight, Inc., 9-1985, 2011 U.S. Dist. LEXIS 113392, at *14 (M.D. Fla. Sept. 29, 2011). Similarly, Fla. Stat. § 772.11, on which Plaintiff relies, provides a remedy for "civil theft." See 1021018 Alberta Ltd. V. Netpaying, Inc., No. 10-568, 2011 U.S. Dist. LEXIS 30725, at *14 (Mar. 24, 2011). Under a plain reading of the theft/wrongful taking exception to the MDL settlement and release, Plaintiff's claims regarding the theft or wrongful taking of customer funds relating to his policy are excluded. Thus, these claims are not barred by the MDL settlement and release, and may proceed.

### B. "Independently Arising" Exception

At this point, I have determined that Plaintiff is a class member, that notice was adequate, and that the claims asserted in his Amended Complaint are encompassed by the broad, general language of the settlement and release. I have also determined, however, that certain Counts may proceed as excluded from waiver by the "contractual claim" or "theft/wrongful taking" provisions of the settlement and release, while others may not. Thus, it is left to determine whether the remainder of his Amended Complaint -- i.e., the claims for unfair claims practices (Count III), fraud (Count IV), and negligent misrepresentation (Count V) -- is barred, or whether it instead falls outside the scope of the settlement and release for any other reason.

Thus, I next address the release exclusion for "any claim that independently arises from acts, facts, or circumstances arising after the end of the Class Period." This must be read in conjunction with the class period, which falls between 1982 and 1997. Plaintiff, in relying on the exclusion, argues both that several of his claims arose after the class period closed in 1997, and that his claims differ in substance from those asserted in the MDL proceeding. In so doing,

Plaintiff relies, in part, on this Court's ruling in Harvey v. Metropolitan Life Ins. Co., No. 96-179 (August 6, 2004).[6]

In Harvey, plaintiff filed a putative class action in state court, alleging that a child rider in his policy provided a death benefit that ceased when a child reached the age of 25. Plaintiff alleged that he continued to pay the rider portion of his premium after his children were over 25 and no longer covered by the policy, and that Defendant wrongfully continued to accept the premium. Although plaintiff had purchased his policy during the class period, and thus was a class member, the fraudulent activity alleged occurred outside of the class period. Defendant, relying on the same settlement and release language at issue in this case, moved to enforce the settlement. I found that the MDL settlement and release did not bar plaintiff's claims, for two express reasons: first, because the key facts underlying the claim had arisen after the class period, and second, because the state action asserted claims that did not involve the same nucleus of operative facts as the MDL action. Harvey, therefore, speaks to the concept that the "independently arising" exclusion has both chronological and factual dimensions.[7] Indeed, the exclusion itself requires that a claim "arise" after the class period, and that it do so "independently."

In this case, unlike in Harvey, the key facts underlying Plaintiff's claims occurred across a time period that encompasses, but extends beyond, the class period. Plaintiff alleges that Defendant acted wrongfully beginning in 1995, after his disability claim was approved. He then

---

[6] The plain language of the MDL documents broadly releases all claims arising out of, concerning, or relating to almost all possible elements of an insured and insurer relationship; then, in the conjunctive and separately, it releases claims arising out of, concerning, or relating to matters in the MDL Complaint and Amended Complaint. Thus, the general release language was not limited to allegations raised in the MDL. Accordingly, any requirement that the Plaintiff's allegations be similar to those in the MDL must stem from an exclusion or other, overarching principles.

[7] The factual dimensions of the inquiry are repeatedly reflected in general principles surrounding the analysis of class settlements. For example, "a judgment pursuant to a class settlement can bar later claims based on the allegations underlying the claims in the settled class action…" In re Prudential Ins. Co. of Am. Sales Pract. Litig., 261 F. 3d at 365 (emphasis added).

11

alleges a continuing course of conduct, with additional specific allegations of acts, facts, and circumstances occurring in 2009. It is clear that Plaintiff may not pursue claims for misconduct occurring prior to December 31, 1997, when the class period expired.[8] Accordingly, Plaintiff's for fraud, pleaded at Count IV of the Amended Complaint, is not subject to the exclusion. As pleaded, the fraud occurred in 1995. That fraudulent conduct "continued," and Defendant's 2009 acts were "an effort to conceal" the fraud. Clearly, the alleged fraud did not "independently arise from acts….arising after the class period." Instead, Plaintiff has pleaded that this particular claim as dependent and centered on acts, facts, and circumstances arising during the class period. That claim, therefore, is not excluded from the release.

This is not the case, however, for all of Plaintiff's remaining claims. Certainly, merely alleging some post-settlement conduct cannot exempt an entire complaint or claim from the time limitations imposed by the class period. See Thomas v. Metropolitan Life Ins. Co., No. 96-176 (July 13, 2009). By the same token, however, Defendant has not persuaded me that merely alleging some pre-settlement conduct results in an all-inclusive release of every claim asserted in a complaint. For example, there is no suggestion that the alleged events of 2009 are not actionable, independent of events occurring during the class period.[9] For example, Plaintiff asserts his intention to pursue a Count for unfair claims practices based on Defendant's 2010

---

[8] I will not further parse each Count in Plaintiff's Amended Complaint, as neither party has asked that I do so, and whether a particular tort or statutory violation arose, as a matter of state law, has not been placed before me. Thus, I draw the chronological line. For example, in Count III of Plaintiff's Complaint, he may pursue a claim based on Defendant's discrete 2009 conduct, but not on the initial 1996 failure to act in accordance with the approval of disability. The same lines may be drawn at each Count of Plaintiff's Amended Complaint.

[9] Importantly, I do not here find that the alleged wrongdoing is, in fact, actionable or states a viable claim under Florida law - nor do I opine regarding when a particular cause of action "arose" under Florida law. If a claim "arose" during the settlement period, and did not independently arise from post-1997 fact, acts, or circumstances, it has been released and may not proceed. The parties have not fully briefed this issue, however, and merely make conclusory statements of their positions regarding when Plaintiff's claims arose. Thus, at this time, I can do no more than "issue a ruling concerning…[my] prior orders, and the effect which those orders have on plaintiff's ability to litigate the claims" that appear on the face of his Amended Complaint. See Spirio v. MetLife, 96-179 (Apr. 7, 2003).

12

conduct. Accordingly, a claim based on the latter conduct, at least temporally speaking, would appear to be enfolded by the "independently arising" exclusion.

Consonant with the reasoning underlying Harvey, however, I also look to whether the claims are "independent" in that they do not share with the MDL claims a "common nucleus of operative fact." In this vein, the key inquiry is "whether the factual predicate for future claims is identical to the factual predicate underlying the settlement agreement." Freeman v. MML Bay State Life Ins. Co., No. 11-1144, 2011 U.S. App. LEXIS 19442, at *5 (Sept. 21, 2011); see also Authors Guild v. Google Inc., 770 F. Supp. 2d 666, 675 (S.D. N.Y. 2011). Our courts, however, have not required strict factual or legal identity between the underlying claims and individual claims. Cf. Freeman, 2011 U.S. App. LEXIS 19442, at **5-6; Arjomand v. Metropolitan Life Ins. Co., 77 Fed. Appx. 121 (3d Cir. 2003).

In the underlying MDL matter, as discussed supra, the class representatives brought suit for various deceptive sales and marketing practices. Here, the bulk of Plaintiff's remaining claims do not arise from the same or similar factual predicates.[10] Following 1997, Plaintiff does not contend that Defendant engaged in any illegal or deceptive conduct relating to the sale, purchase, or marketing of the policy or rider at issue. Defendant points to no claim in the Class Action Complaint, or the Amended Complaint in the MDL, that can fairly be said to encompass Plaintiff's remaining claims.[11] Thus, Plaintiff may allege claims based on key facts arising after 1997, that do not share a common nucleus with the MDL claims.

---

[10] Defendant characterizes Plaintiff's claims as involving an out-of-pocket premium replacement policy, which was involved in the MDL proceeding. Those allegations, however, referred to the costs and financing of plaintiffs' purchases of replacement policies. The present Plaintiff does not allege that he purchased any replacement policy, and thus his claims are materially different.

[11] This outcome is responsive to the principles embodied in Plaintiff's challenges on grounds of res judicata, due process, and lack of adequate representation. Plaintiff's central concerns relate to the identity of the settlement class as policy owners, rather than persons victimized by deceptive sales practices. The limitations imposed by comparing the substance of the claims settled in the MDL with an individual Plaintiff's claims is inherently protective in that regard. Nonetheless, I have considered Plaintiff's contentions. After the extensive amount of

## V. CLASS CLAIMS

My conclusion that certain claims should be permitted to proceed, however, relate solely to Plaintiff's individual claims. Plaintiff purports to define the class as persons who hold a financial product similar to his, purchased from Defendant, that contain a similar disability benefit rider. It is apparent that such a class, if pursuing tort, declaratory, and statutory claims such as those that Plaintiff raises, will include persons who purchased policies during the class period, and the claims involve acts, omissions, facts, matters, or transactions with respect to the Company's practices regarding policy or premium charges and monthly deductions. Further, as in Harvey, there is no indication that the claims of class members will be those "independently arising" after the class period, or those who are entitled to pursue declaratory relief for a contractual right to benefits payable in the future. For these reasons, Plaintiff will be enjoined from pursuing any and all claims on behalf of the class defined and identified in his Amended Complaint.

## CONCLUSION

In sum, Defendant's Motion shall be granted in part and denied in part. It will be granted to the extent that the MDL settlement and release bars Plaintiff from seeking declaratory or ancillary relief that is retrospective in nature; from seeking compensation or redress for Defendants' alleged wrongful acts preceding December 31, 1997; and from pursuing Counts IV, VI and VII of his Amended Complaint. Plaintiff shall also be enjoined from pursuing class relief on behalf of the class as defined in his Amended Complaint.

---

time, thought, and paper expended on the issues surrounding class certification in this matter, I am not persuaded that the proceeding violated Plaintiff's due process rights in the manner urged. Instead, I am persuaded that the initial extensive due process analyses conducted towards the earlier part of this litigation were sufficient. I note, too, that because Plaintiff will be permitted to proceed with claims arising after 1997, I need not consider his policy arguments regarding waiver of future claims.

The Motion will be denied, however, to the extent that the class settlement and release does not bar Plaintiff's claims for prospective relief, as stated in Count II of his Amended Complaint; and the individual claims for civil theft and conversion as stated in Counts VIII and IX.[12]  Likewise, Plaintiff may pursue Counts IIII and V, to the extent that he seeks redress or compensation for wrongdoing occurring after the class period.  This decision represents a careful acknowledgement of the importance of and preference for comprehensive, final class action settlements, and also the due process concerns raised when assessing an individual's participation in a class settlement.

An appropriate Order follows.

## ORDER

AND NOW, this 10th day of November, 2011, it is hereby ORDERED, ADJUDGED, and DECREED that Defendant's Motion to Enforce Settlement (Docket No. 1104) is GRANTED in part and DENIED in part, as follows:

Plaintiff is enjoined from proceeding with his claims for retrospective relief in Count II of the Amended Complaint, but may proceed on that Count as respects prospective relief.

Plaintiff is enjoined from proceeding on Counts IV, VI, and VII of the Amended Complaint.

As regards Counts III and V of the Amended Complaint, Plaintiff is enjoined only from prosecuting those portions that seek redress or compensation for wrongdoing alleged to have occurred prior to December 31, 1997.

No limitation stated herein pertains to Counts VIII and IX, of which no part is enjoined from proceeding.

---

[12] In determining that the MDL settlement and release does not bar Plaintiff from pursuing certain claims in state court, of course, I have not considered, and express no opinion regarding, whether those claims are otherwise factually or legally viable.

15

Further, Plaintiff is enjoined from taking further action to certify the class identified in his Amended Complaint, and from proceeding on Count I therein.

The remainder of the Motion is denied, and Plaintiff is not enjoined from proceeding with the remainder of his Amended Complaint. Accordingly, Plaintiff may proceed with the action

Plaintiff's Motions regarding judicial notice (Docket Nos. 1114 and 1110) are DENIED as moot.

BY THE COURT:

/s/Donetta W. Ambrose

Donetta W. Ambrose

Senior Judge, U.S. District Court