IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE: METROPOLITAN LIFE            )
INSURANCE COMPANY SALES             )
PRACTICES LITIGATION                ) Misc. No. 96-179
                                    )

This matter relates to:
Matthews v. Metropolitan Tower
Life Ins. Co. and MetLife, Inc.
Case No. 10-38725 CA 40
(11th Jud. Cir., Miami-Dade County, Fla.)


**OPINION AND ORDER**

**SYNOPSIS**

Before the Court is Plaintiff's Rule 60(b) Motion for Reconsideration and/or Clarification of this Court's Order dated November 10, 2011. In re Metropolitan Life Ins. Co. Sales Practices Litig., No. 96-179, 2011 U.S. Dist. LEXIS 130073 (W.D. Pa. Nov. 10, 2011). Plaintiff seeks reconsideration of portions of the Order enforcing the settlement and release in MDL No. 1091. The crux of Plaintiff's primary argument rests on due process -- i.e., that class members lacked sufficient identity of interest with Plaintiff, and that his claims do not share the required nexus with the class claims. Further, he seeks clarification regarding the extent to which certain Counts of his Complaint may proceed.

For the following reasons, Plaintiff's Motion for Reconsideration will be denied, and his Motion for Clarification granted.

**OPINION**

**I. MOTION FOR CLARIFICATION**

First, Plaintiff seeks clarification regarding whether he may proceed with his individual claims at Count I of the Complaint. In the November 10 Order, I found that only Plaintiff's class

1

claims -- as pleaded, in the class he proposed in the Complaint under consideration at the time of my Opinion -- are precluded.  Count I is captioned "Class Action Count for Declaratory and Ancillary Relief," and I treated that Count as asserting only a class claim.  To the extent that Count I encompasses any individual declaratory claim, that claim may proceed within the other parameters established by the November 10th Opinion. [1]

Similarly, Plaintiff seeks clarification of my ruling that Counts IV and V of his Complaint are barred from proceeding.  Again, my ruling was specific to the Complaint before me.  I found that Plaintiff had pleaded his fraud claim, at Count IV, as dependent on, and a continuation of, Defendant's alleged 1995 fraud.  Thus, I found that, as pleaded, that claim did not "independently arise" after 1995.  Plaintiff's negligent misrepresentation claim, in contrast, specifically asserts conduct occurring after the close of the class period, as an independent basis for the claim -- for example, that claim asserts the 2009 representation as an independent negligent act.  Accordingly, as with other claims addressed throughout the November 10 Opinion, Count V was deemed excluded from release to the extent that it asserts claims independently arising after the pertinent time period.  In connection with Count II of the Complaint, Plaintiff requests that I clarify his ability to pursue disability benefits that were not paid after the class period.  Nothing in the November 10 Order precludes him from pursuing such benefits.

Likewise, nothing in that Opinion and Order precludes plaintiff from attempting to amend his pleadings to assert claims that fall outside of the constraints of the MDL settlement and release.  Unless barred by other rules or decisions, he is free to make such an attempt.  I will not, however, issue any advisory opinions regarding allegations that are not before me.  The parameters of Plaintiff's claims, going forward, lie within the authority of the presiding state

---

[1] It appears that any individual relief encompassed by that claim overlaps the declaratory claim asserted in Count II.

court. I am quite confident that the state court is capable of interpreting and implementing the Orders entered in this litigation, and that it needs no federal policing in doing so.

## II.  MOTION FOR RECONSIDERATION

### A.  RULE 60(b) STANDARDS

Plaintiff's Motion for Reconsideration is brought pursuant to Fed. R. Civ. P. 60(b). Motions for reconsideration are granted sparingly, "[b]ecause federal courts have a strong interest in finality of judgments." Continental Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D.Pa. 1995). The purpose of a motion for reconsideration is "to correct manifest errors of law or fact or to present newly discovered evidence." Max's Seafood Cafe v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).

### B.  NOTICE ISSUES

Plaintiff seeks reconsideration of the portion of the Order rejecting his argument that because he received an incomplete notice package, he is not bound by the class settlement.[2] As recounted in the Findings of Fact and Conclusions of law in the MDL, the Publication Notice contained all of the information that Plaintiff contends was lacking in his mailed notice.[3]

---

[2] Plaintiff contends that his failure to receive proper notice exempts him from the class; he is not now seeking to opt out of the settlement based on failure of notice. Indeed, Plaintiff appears to assert that the partial notice caused a misapprehension about the benefits due him through the settlement. He does not assert that he would have opted out of the class had he received the complete notice package or complete information. Thus, I need not assess the reasons that he failed to opt out in light of whether his failure to do so was excusable.

[3] As described in the Findings of Fact and Conclusions of law issued in this proceeding:

> The Publication Notice included, among other things, (i) the case caption; (ii) a description of the Settlement Class; (iii) a brief description of the proposed Settlement; (iv) identification of counsel for the Class; (v) the date and time of the Fairness Hearing; (vi) information about appearing [*50] at the Fairness Hearing; (vii) information about and the deadline for filing objections to the Settlement; (viii) information about and the deadline for filing requests for exclusion; (ix) the consequences of requesting exclusion; (x) the consequences of remaining in the Settlement Class; (xi) a description of MetLife's responsibility for plaintiffs' attorneys' fees and expenses; (xii) a description of the preliminary injunction issued by the Court; and (xiii) the procedure for obtaining additional information, including a toll-free telephone number regarding how they could obtain an individual Class Notice Package.

Further, after a comprehensive fairness proceeding, I found that the notice scheme was constitutionally and otherwise adequate. Plaintiff testifies that he was not aware of the publication notice, and that he was ill at the time; but as discussed in the November 10 Opinion, actual notice is not required. Plaintiff did not and has not proffered any legal authority to demonstrate that the receipt of incomplete notice, or any of the facts surrounding his receipt of notice, is fatal to his inclusion in the class.[4]

> [T]he court has already determined that the notice given in the MDL comported with, and, in fact, exceeded the requirements of due process as to the entire class. Class notice is not deficient simply because some class members failed to receive individual written notice. Having provided notice which exceeds the requirements of due process, MetLife need not establish that each class member received actual notice of the Class Settlement.

Allen v. MetLife, No. 96-179, Feb. 24, 2005.

For these reasons, even accepting Plaintiff's affidavit as true, I cannot find that partial notice affects his inclusion in the class. The Motion will be denied to that extent.

### C. CONTRACTUAL EXCLUSION

Next, I address Plaintiff's motion for reconsideration and clarification of my decisions regarding the exclusion for a contractual right to make a "claim for contractual benefits that will become payable in the future pursuant to the express written term of the Policy…." Plaintiff suggests that the undefined term "in the future" merely describes the benefits to be paid under a policy, and is not temporally related to when a claim is made. My interpretation, he contends, would preclude the typical claim for breach of contract, such as a failure to pay benefits, which arises only when the benefits are past due. Plaintiff avers that such a result is inconsistent with a

---

In re Metro. Life Ins. Co. Sales Practices Litig., No. 96-179, 1999 U.S. Dist. LEXIS 22688, 49-50 (W.D. Pa. Dec. 28, 1999).

[4] Moreover, I note that the materials that Plaintiff actually received identified the policy at issue as his original "class policy." It is difficult to recognize a claim of surprise that a rider to that policy might be implicated.

4

"policy" of giving claims for benefits "greater respect" than those for amorphous wrongdoing. There are, however, no grounds for reading such a policy into the settlement language, much less for issuing a ruling based on such a policy.

Similarly, to interpret the plain language "benefits that will become payable in the future" to include benefits that became payable in the past, as Plaintiff urges, would do violence to that plain language. All benefits payable under a contract are "future," however, in the sense that they cannot become payable pursuant to the terms of the contract prior to the existence of the contract. If I adopted Plaintiff's interpretation, the exclusion would encompass all claims for contractual benefits, and would nullify the limiting language altogether. I am not at liberty to ignore or invalidate the plain language of the agreement. Moreover, that plain language is not necessarily as absurd as Plaintiff contends: while it is true that claims for contractual breaches often involve retrospective relief, they often do not.[5] I note, too, that I did not hold that the exclusionary language per se disallows claims for past due benefits, or compensatory amounts equal thereto; instead, I found only that such claims are not captured by the language of the exclusion at issue. Indeed, the November 10 Order permits Plaintiff, on other grounds, to proceed with claims for which an award including or equal to the amount of past-due benefits might be an appropriate remedy.

Next, I consider Plaintiff's request that I reconsider the Order enjoining his claims in Counts VI and VII, for declaratory relief regarding the nature of the fiduciary duty owed, and for breach of that duty. In Plaintiff's well-constructed initial brief in opposition to the Motion to

---

[5] For example, an insured might claim that Defendant breached the parties' life insurance agreement by wrongfully terminating the policy prior to the insured's demise. In that situation, the claim might be one for contractual benefits -- i.e., payout at death -- that will become payable in the future. Likewise, I point Plaintiff to the doctrine of anticipatory breach, which allows a breach of contract action prior to non-performance of a contract. Plaintiff asserts that a failure to pay a death benefit would entitle a policyholder to only prospective relief. Such a failure, however, rests on a discrete event -- the insured's death -- that either occurred during the settlement period, in which case it would likely be known at the time of settlement, or would likely be subject to the "independently arising" exception. Again, the result is not so absurd as Plaintiff paints.

5

Enforce, he argued that Counts VI and VII fell within the contractual exclusion from the release. My analysis and conclusion were responsive, and thus limited, to his contentions. Accordingly, I concluded that those claims did not, in fact, constitute claims for benefits payable in the future pursuant to the express written terms of the policy. Moreover, Plaintiff expresses concern that the November 10 Order enjoining his fiduciary claims constrains the means available for the state court to address the claims before it. Restricting the actions of another court is an unavoidable consequence inherent in this type of proceeding, and that incursion is not sufficient reason to allow Plaintiff's fiduciary claims to proceed. Plaintiff has not now proffered any grounds that justify reconsideration of my conclusion regarding those claims.[6]

### D. FACTUAL IDENTITY

Next, Plaintiff raises several interrelated arguments, all of which rest on the foundational contention that his claims differ from those raised in the class complaint and amended class complaint. In so doing, Plaintiff repeatedly, and correctly, points to the legal standard that looks to whether underlying claims share a factual predicate with the settled class claims. Our Court of Appeals, however, has not applied or interpreted that standard in the strict manner that Plaintiff advocates.

Recently, in <u>Varacallo v. Mass. Mut. Life Ins. Co</u>., 226 F.R.D. 207, 219 (D.N.J. 2005), the initial complaint defined the class as policy owners who were victims of various deceptive practices, which were primarily sales practices.[7] The eventual settlement class, however, was

---

[6] As discussed in the body of today's Opinion, my analyses and resulting decisions were specific to the parties' contentions and the allegations in the Complaint before me, and should be narrowly viewed as such. If Plaintiff were to raise a claim for breach of fiduciary duty that is not encompassed by the MDL release and settlement, it is possible that a declaratory claim regarding which duty is applicable would become appropriate or necessary. Again, however, I cannot rule on the propriety of a non-existent pleading.

[7] Similar to this MDL, the class complaint in <u>Varacallo</u> alleged vanishing premiums; misrepresentations about cash and account values changing over time; churning; charging premiums for periods of nonexistent coverage;

defined as "consist[ing] of all persons or entities who or which, has/have as of the Eligibility Date…an ownership interest in a Policy issued during the Class Period."[8]  Id. at 219-20. Pursuant to the settlement, class members released claims "on the basis of, connected with, arising out of, or in any way related to, in whole or in part," inter alia, the following transactions: "the expenses and/or costs (including all expenses, charges, and other deductions) charged or to be charged against the Policy or Policies," the "terms, . . . and operation of any Policy, including . . . the amount or method of calculation of fees, charges, commissions, distribution costs, administrative expenses, and/or taxes in connection with the sale of, as part of the premiums for . . . a Policy…." Freeman v. MML Bay State Life Ins. Co., No. 11-1144, 2011 U.S. App. LEXIS 19442, at *3 (3d Cir. Sept. 21, 2011).

   Subsequently, plaintiff filed suit, alleging that defendant had, on a monthly basis, improperly deducted as mortality charges amounts unrelated to mortality.  The District Court entered summary judgment against him based on the class release, noting that his claim arose out of the policy that made him a member of the class. Id. at **4-5, 6.  On appeal, plaintiff argued that his claim was "not barred by the Varacallo release because the present claim is not based on the same factual predicate as the claims in the Varacallo litigation." Id. at *5.  He contended that his claims involved the breach of policy terms, as opposed to the deceptive sales practices involved in the class action.  Id.  Both parties conceded that the class complaint had not alleged that defendant was deducting as mortality charges amounts unrelated to mortality.  Id. at *6 n. 4.

---

misrepresentations of insurance policies as investment, retirement, or savings plans; and policies issued to juveniles based on smoker rates.  Varacallo, 226 F.R.D. at 216-17.

[8] There are numerous examples, within this Circuit, of classes defined by ownership status within a defined period of time, rather than by reference to the type of harm suffered, or wrongful conduct alleged in the class complaint. See, e.g., In re Prudential Ins. Co. of Am. Sales Prac. Litig., 261 F. 3d 355, 359 (3d Cir. 2001).

The Court of Appeals cited the principle that a settlement may bar future claims by class members, even if the precluded claim was not presented, and could not have been presented, in the class action. Id. at *5. Further, the Court stated that the "key inquiry is whether the factual predicate for future claims is identical to the factual predicate underlying the settlement agreement." Id. at **5-6. It then offered guidance regarding the meaning of this inquiry: "The class plaintiffs challenged the administration of policies and the calculation of policy charges… The fact that the plaintiffs in [the class complaint] were challenging different … practices with respect to the policies does not mean that the factual predicates are different. The settlement does not define the scope of the Release by reference to the claims alleged in the [class] complaint, but rather, extends to the extensive list of released transactions…." Id. at *6. Because plaintiff in the underlying suit sought to challenge the "amount or method of calculation of charges," which was included in that "extensive list," plaintiff sought to "challenge precisely what he is barred from challenging by the Release…." Id. Accordingly, the court concluded that the "present claim arises from the same factual predicate" as the class plaintiffs' claims. Id.

Thus, our Court of Appeals did not require strict factual identity between the class and individual complaints in order to find the individual claims released. Instead, the "identity" inquiry, as formulated by our Court of Appeals, may properly involve a comparison of the individual complaint to the "factual predicate underlying the settlement agreement." Multiple prior decisions issued in this MDL proceeding are consistent with this approach. The settlement and release in this action has repeatedly been interpreted to preclude suits lacking the type of identity that Plaintiff now urges is compulsory -- i.e., cases in which the underlying actions asserted claims based on wrongdoing other than the practices alleged in the class complaints, or

any deceptive sales or marketing practice at all.[9]   There has been absolutely no indication from our Court of Appeals that this approach is manifest error or otherwise improper.  As stated previously in this proceeding,

> The question here… is whether <u>all</u> claims arising with respect to a policy issued during the Class Period are barred.
> ***
> [T]he fact that plaintiff…is not "relying upon the common nucleus of operative facts underlying" the Class Settlement since the [wrongdoing alleged by plaintiff] was not part of that litigation is irrelevant. Although there was no claim raised by the Consolidated Class Action Complaint in <u>In re MetLife</u> which called into question [the issues raised in plaintiff's complaint] the issue is not whether the precise claim was raised. The issue is whether [plaintiff] may be held to the terms of the Release which bars <u>any</u> claims on Class Policies.

<u>Ross v. Metro. Life Ins. Co.</u>, 411 F. Supp. 2d 571, 576-77 (W.D. Pa. 2006) (emphasis in original).[10]

While other appellate courts may approach the issue through a different lens, I am bound to follow the guidance of the United States Court of Appeals for the Third Circuit, which is consistent with prior rulings issued in this matter.  This MDL settlement, as in <u>Freeman</u>, does not define released transactions by reference to the underlying class complaint.  As in <u>Freeman</u>, the "key inquiry" implicates the extensive list of released transactions set forth in the settlement documents, and the fact that the list encompasses Plaintiffs' claims.  I note, too, that while Plaintiff's claims are not identical to those raised in the class complaints, nor are they as

---

[9] <u>See, e.g.</u>, <u>Gruber</u>, 96-179, March 21, 2007 (release language precluded plaintiffs from pursuing declaration of cash value stemming from cancellation of policy). <u>Pennick,</u> 96-179, May 27, 2004, <u>aff'd</u>, 138 Fed. Appx. 479 (3d Cir. 2005) (release language precluded claims for misrepresentations regarding the effect of policy loans taken after the issuance of the policy); <u>Arjomand v. Metropolitan Life Ins. Co.</u>, 2-76, Dec. 11, 2002 (release language precluded plaintiffs from bringing, <u>inter alia</u>, claims that they were not informed that policies would be issued by a non-mutual company, rather than Defendant);

[10] In <u>Ross</u>, the plaintiffs challenged the use of a blended smoker and non-smoker mortality rate to calculate premiums for juveniles, regardless of whether the juveniles were smokers.  The Court of Appeals for the Third Circuit has cited <u>Ross</u>, without disapproval. <u>Freeman</u>, 445 Fed. Appx. at 580 n. 5.

tangential as Plaintiff contends.[11] For example, the class complaints involved misrepresentations regarding the likelihood that premium payments would be required at a certain point in the life of the policy,[12] and Plaintiff's pleading involves misrepresentations regarding whether premium payments would be required at a certain point in the life of the policy. That the class and present complaints allege different practices regarding conduct included in the settlement -- such as "the Company's practices regarding policy or premium charges and monthly deductions" -- does not mean that their factual predicates differ.

Moreover, the fact that Plaintiff's action rests on a disability rider does not distinguish it from the class action. The primary effect of the rider was to waive premiums for the very policy that renders him a class member. Essential to his claims is whether premiums were in fact due on that policy, as a result of the rider; the rider cannot, for present purposes, be considered as divorced from the class policy. In other words, his claims are not, as he asserts, "completely unrelated" to the underlying class action.

---

[11] Contrary to Plaintiff's suggestion, I did not, in this case, find that Plaintiff's claims had no common nucleus of operative fact with the class action. Instead, I observed that Defendant had pointed to no such claims in the class action. I also observed that "the bulk of Plaintiff's remaining claims do not arise from the same or similar factual predicates," in connection with the "independently arising" exclusion, rather than in connection with a due process inquiry. This analysis was pursuant to Harvey v. Metropolitan Life Ins. Co., No. 96-179 (August 6, 2004), in which the lack of a "common nucleus of operative fact" was relevant to the exemption from the release, and not to whether the claims were included under the broad release language.

[12] As described previously in the MDL, the class litigation included allegations regarding the following:

> [T]he issues of whether MetLife failed to disclose material information relating to replacement, the nature of the policy, policy dividends, interest credits and values, whether MetLife breached its policy or annuity contracts or violated applicable regulations or statutes by the uniform practices alleged, whether MetLife developed a common scheme for fraudulently inducing Class Members to purchase life insurance or annuities, and whether MetLife implemented any such scheme by training sales representatives to use uniformly deceptive sales or other techniques and by providing sales representatives with uniformly deceptive materials and policy illustrations to be used with prospective or existing policy or annuity holders.

In re Metro. Life Ins. Co. Sales Practices Litig., No. 96-179, 1999 U.S. Dist. LEXIS 22688 (W.D. Pa. Dec. 28, 1999).

### E. ADEQUACY OF REPRESENTATION

This leads us to Plaintiff's argument that the class representatives did not adequately represent his interests.  Plaintiff proposes that an absent class member with an inchoate or unknown claim should be permitted to collaterally attack a settlement, if class members held already-accrued claims.[13]  Moreover, he contends that the class representatives were inadequate, due to the lack of factual identity between his claims and theirs.  Plaintiff takes issue with my brief treatment of his arguments, in the Order under review.  To assure Plaintiff that I did not elide his contentions, I will address them more fully now.

With respect to the differences between holders of known and unknown claims, Plaintiff suggests that I follow Stephenson v. DOW Chem. Co., 273 F. 3d 249 (2d Cir. 2001), in which the court held that a class member may collaterally attack a class settlement on grounds of adequate representation.  Both Stephenson and Georgine v. Amechem Prods., 83 F. 3 610 (3d Cir. 1996), aff'd, Amchem Prods. v. Windsor, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997), to which Plaintiff has also referred, involved class representatives who suffered injury as a result of exposure to a harmful substance, and also "exposure-only" class members who might not have known of their exposure, or had not yet suffered the effects of their exposure.[14]

Presently, Plaintiff likens his so-called inchoate claims to those held by "the futures" -- the term used for exposure-only class members --  in Amchem.  In Amchem, 83 F. 3d at  620, 630, the court noted that the settlement allocated recovery among different kinds of plaintiffs, with lesser benefit provided to those who might suffer exposure-related injury ten or fifteen years after settlement. The settlement granted the futures certain rights, such as the tolling of the limitations period, and provided that they would submit their claims when they developed an

---

[13] I will assume, for purposes of this limited discussion only, that some of Plaintiff's claims had not accrued at the time of the class settlement.
[14] Stephenson and Amchem involved Agent Orange and asbestos, respectively.

11

impairing illness.  Id. at 620.  Because their interests differed, however, the presently injured plaintiffs conflicted with the futures plaintiffs.  For example, the latter would want reduced current payout and inflation protection, and the former would want to maximize current payout. The court found that, as a result, the situation presented "serious intra-class conflicts."  Id. at 630.  On that basis, even though different types of plaintiffs were named representatives, adversity among the subgroups was found to preclude adequacy of representation.  Id. at 631.

More generally, adequacy of representation, as rooted in due process principles, has been described as follows:

> Not every variation between the interests of an absent class member and those of the class generally will render the class representatives inadequate. The adequacy-of-representation determination turns on whether the interests of the class were "compatible" with those of the party attempting to attack the class action judgment collaterally. In assessing compatibility, we look at "alignment of interests of class members." There is no litmus test for determining when interests of one or more absent class members are sufficiently distinct from those of the class representatives to render those representatives inadequate.

Wolfert v. Transamerica Home First, Inc., 439 F.3d 165 (2d Cir. 2006).

Keeping these additional principles in mind, the type of adversity present in Amchem simply did not exist in this case.  In the first instance, Plaintiff cursorily asserts that policy holders with unknown claims cannot be represented by those with known claims, but he fails to point to any conflict between the two groups akin to those present in Amchem.  Plaintiff contends that people with unknown claims were unable to participate in the ADR regime.  The settlement, however, states that the ADR Process would be used to resolve "claims relating to or arising out of the servicing or administration of a policy…that are unknown or unknowable as of the date for electing Claim Evaluation."  Indeed, the notice that Plaintiff actually received, which is appended to his affidavit, states that the ADR process "will allow you to address claims

relating to or arising out of the servicing or administration of your policies…if you did not discover those claims until after November 2, 1999, and you could not have learned of them before that date, even if you had used reasonable care."

In the November 10 Order, I stated that the due process analysis conducted in connection with the class settlement was sufficient. I did not rely on the amount of physical or mental resources expended during that process as a legal test of any sort, or as grounds for summarily rejecting Plaintiff's challenge; likewise, I nowhere held that collateral attack, or a challenge to certification, is unavailable to this Plaintiff. Instead, as explicitly stated in the pertinent footnote, I considered Plaintiff's contentions. In so doing, I reviewed the extensive due process analysis conducted in connection with the class settlement, and the outcomes of approximately twelve years' worth of challenges that implicated various aspects of that process. I also considered Plaintiff's contentions against a backdrop of the law in this Circuit with respect to the relationship between class claims and an individual plaintiff's underlying claims, as discussed supra. Upon such review, and in light of all of the circumstances present in the case at bar, I concluded that the process was not lacking in fundamental fairness.

In addition, contrary to Plaintiff's suggestion, when I addressed adequacy of representation in the MDL, I directly spoke to the substance of the commonality and Amchem -type arguments that Plaintiff now raises. For example, in the Findings and Order Conditionally Certifying a Class for Settlement Purposes, I stated that "[a]ll policy and annuity owners who believe they were deceived have the same shared interested and incentive in establishing the alleged fraud and to maximize the overall recovery." I cited to the principle that the class interests are not antagonistic if all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class. Further, I specifically found that this

case presented no conflict such as that presented in Amchem, in that there was no sacrifice of the interests of some class members for those of others.

Moreover, I noted in the MDL that each class member had knowledge of the administration and servicing of his policy, and was able to make an informed decision about the settlement. "Knowledge" includes the awareness that one presently possesses no grounds for a lawsuit. Persons with this type of knowledge -- including those with no claims and unknown claims -- were specifically accounted for in the settlement, as discussed supra. The terms of the settlement, including the settlement relief, were exhaustively vetted and found appropriate under applicable standards. The possibility of unknown claims was also acknowledged in the release language. All of these factors belie Plaintiff's argument that no consideration was given to class members with unknown claims.[15] I must, on these grounds, decline to reconsider Plaintiff's arguments regarding adequacy of representation.

### F.     ATTORNEY'S FEES

Finally, Plaintiff submits that this Court did not address his request for attorney's fees, which was raised in his brief. A brief, however, is not the appropriate mechanism for seeking a court order. Instead, a request for a court order must be made by Motion and Proposed Order, in accordance with applicable chambers rules. At this time, there is no such request pending on the docket. I will consider such a request if and when it is filed.

---

[15] This situation is thus unlike Hesse v. Sprint Corp., 598 F.3d 581 (9th Cir. 2010), to which Plaintiff cites. In Hesse, the class settlement agreement approved by the state court defined the relevant regulatory fees "to include only specified fees imposed to recover the cost of compliance with federally mandated programs." Id. at 585. Another term of the settlement, however, purported to release Defendant from a much broader set of claims than those relating to the defined regulatory fees. Id. at 586. Later, when plaintiffs brought suit based on a Washington state business and occupation tax, which Sprint allegedly passed on to its customers, Defendant asserted the release. Id. at 585. The state court, however, "did not make an explicit finding that the [class representative] Plaintiff was an adequate representative of the class, much less that he was an adequate representative as to the [business and occupation tax] claims…" Id. at 588.

## CONCLUSION

In sum, Plaintiff's Motion for Clarification is granted, and I have clarified the prior Order as requested. Plaintiff has not, however, demonstrated grounds for reconsideration under applicable standards. The Motion for Reconsideration is denied. An appropriate Order follows.

## ORDER

AND NOW, this 19th day of April, 2012, it is hereby ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion for Reconsideration and/or Clarification [1132] is granted in part and denied in part, as fully set forth in the body of the Opinion.

BY THE COURT:

/s/Donetta W. Ambrose

_____

Donetta W. Ambrose, Senior Judge

United States District Court